IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SARA DAILEY; and<br>MELISSA COOK<br>*Plaintiffs* | § § § § § | JURY DEMANDED |
| V. | § § § | CIVIL ACTION NO. |
| GGH – THE FITNESS GROUP, LLC d/b/a FITNESS PROJECT; and T. BRYAN MURPHY<br>*Defendants* | § § § § § § § § § | _____ |

**PLAINTIFFS' ORIGINAL COMPLAINT**

Plaintiffs MELISSA COOK and SARA DAILEY (collectively "Plaintiffs") file this Original Complaint against Defendants, GGH-THE FITNESS GROUP, LLC, d/b/a FITNESS PROJECT; and T. BRYAN MURPHY, individually (collectively "Defendants") and would show the Court as follows:

### I.  PRELIMINARY STATEMENT

1. This lawsuit seeks damages against Defendants for violations of Title VII of the Civil Rights Act of 1964 as amended. Additionally, Plaintiffs seek damages associated with Defendants' violation of the Fair Labor Standards Act ("FLSA"), as amended and the Equal Pay Act. Plaintiffs seek to recover unpaid overtime wages, statutory liquidated damages, reasonable attorneys' fees and costs.

## II. PARTIES

2. Plaintiff Dailey is an individual residing in Montgomery County, Texas.

3. Plaintiff Cook is an individual residing in Montgomery County, Texas.

4. Defendant GG-THE FITNESS GROUP, LLC, d/b/a GOLD'S GYM HOUSTON ("Defendant GGH") is a limited liability company authorized to do business under Texas laws. At all times during Plaintiffs employment, Defendant GGH was the employer of Plaintiffs as defined by 29 C.F.R. § 791.2. Defendant GGH can be served by serving its registered agent, Bryan Murphy, at 6511 FM 1488 Magnolia, TX 77354.

5. Defendant T. BRYAN MURPHY ("Defendant Murphy") is an individual. Defendant Murphy can be served at 10434 Clubhouse Circle, Kingwood, TX 77345. At all times during Plaintiffs' employment, Defendant Murphy was the employer of Plaintiffs as defined by 29 C.F.R. § 791.2.

## III. JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b), which provides, "An action to recover liability prescribed in either of the preceding sentences may be maintained against any employer . . . in any federal or state court of competent jurisdiction by any one or more employees for and on behalf of herself and themselves and other employees similarly situated." In addition, this Court has jurisdiction over the subject matter under 28 U.S.C. § 1331 because the claims arise under laws of the United States.

7. Venue is proper pursuant to 28 U.S.C. § 1391 (b) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## IV. FLSA COVERAGE

8. At all times pertinent to this Complaint, Defendants have acted, directly or

indirectly, in the interest of an employer with respect to Plaintiffs.

9. At all times hereinafter mentioned, Defendants have been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. §203(d).

10. At all times hereinafter mentioned, Defendant GGH has been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. §203(r).

11. At all times hereinafter mentioned, Defendant GGH has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

12. At all times hereinafter mentioned, Plaintiffs are individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §206-207.

V. FACTUAL ALLEGATIONS

13. Defendants provide fitness facilities and personal training services to individuals at Defendants' various locations.

14. Defendant T. BRYAN MURPHY is the CEO/President of Defendant GGH-The Fitness Group, LLC and possesses the following abilities: (1) the power to hire and fire employees; (2) the power to supervise and control employee work schedules or conditions of employment; (3) power to determine the rate and method of pay; and/or (4) power to maintain employment records.

15.     Defendants have employees in the following Texas cities: Houston, Humble, Kingwood, Magnolia, Austin, Conroe, and The Woodlands.

### i.     (Plaintiff Dailey)

16.     On or about February 24, 2014, Plaintiff Dailey was hired as an employee at GGH-The Fitness Group, LLC d/b/a "Fitness Project" (hereinafter "FP").[1] Over the course of seven years with FP, Plaintiff Dailey was subjected to sex-based discrimination, a hostile work environment, unpaid overtime wages, and unequal compensation as compared to her male counterparts.

17.     Throughout her years with the company, Plaintiff Dailey was routinely subjected to sexist remarks and frequent ridiculed by CEO/Owner, Timothy Bryan Murphy (hereinafter "Defendant Murphy"). Furthermore, Plaintiff Dailey was subjected to a hostile work environment wherein she experienced harassing behavior related to her appearance. Additionally, Plaintiff Dailey was compensated at a lower rate than her male counterparts for similar or equal work, and forced to use PTO hours for partial absences, thus subjected her to a variable pay rate.

18.     In her last years with the company, Plaintiff Dailey held the title of Corporate Office Manager. In this role, Plaintiff Dailey was constantly targeted with harassing language by Defendant Murphy in a manner unique to female employees.

19.     On several occasions, Defendant Murphy routinely stated that he was staunchly against what he considered to be gossip and "pity parties." Furthermore, Defendant Murphy routinely expressed his distaste for friendly co-worker relationships between female employees, as he considered said communication "gossip."

---

[1] As of November 16, 2020, GGH- The Fitness Group, LLC has taken on the assumed name of "Fitness Project."

20. On several occasions, Plaintiff Dailey was criticized by Defendant Murphy for her friendly relationship towards Plaintiff Cook, accusing female employees of gossiping whenever they spoke to each other – an accusation that did not follow male employees.

21. On several occasions, Plaintiff Cook and Plaintiff Dailey discussed the work culture where women were undercompensated and subjected to sexist comments intended to silence them. Plaintiff Cook and Plaintiff Dailey also discussed how they received less compensation than what they were owed to due to the misapplication of PTO to absences of less than a full day and illnesses.

22. Plaintiff Dailey was often given significantly more work than what could be completed in a reasonable time period. However, when she attempted to address the need for additional staff to account for the increased workload, she was criticized by Defendant Murphy.

23. In addition to her workload exceeding that of her male counterparts, Plaintiff Dailey was subjected to grossly inappropriate and sexist language. On several occasions, Defendant Murphy spread rumors about other employees to Plaintiff Dailey alleging that certain staff members held a sexual relationship with specific gym members. Despite Plaintiff Dailey's clear discomfort, Defendant Murphy habitually targeted Plaintiff Dailey with this language.

24. Defendant Murphy often pit Plaintiff Dailey against her female counterparts constantly comparing them, and embarrassing her during team meetings. In addition to these meetings, Defendant Murphy routinely addressed Defendant Dailey in a patriarchal fashion. On several occasions, Defendant Murphy referred to Plaintiff Dailey as his "work wife" claiming that he treated her "like a daughter." Defendant Murphy also systematically manipulated Plaintiff Dailey, comparing their work relationship to a marriage and stating, "you don't just quit marriage." Defendant Murphy also warned Plaintiff Dailey that she would never find

another company that "loves and cares about you the way I do." Furthermore, on at least one occasion, Defendant Murphy showed Defendant Dailey that she was listed as one of his favorite contacts in his cell phone, causing further discomfort due to his systematic, inappropriate harassing behavior.

25. These comments were not limited to implications of a pseudo personal relationship, Defendant Murphy also commented on Plaintiff Dailey's appearance in a manner unique to female employees. Defendant Murphy made several damaging comments about Plaintiff Dailey's weight, stating that she lacked a good image for the company's potential rebranding. He then went on to question Plaintiff Dailey's intelligence asking about the last time she read a book to "better [her]self." These discussions were not targeted towards male employees.

26. Near the end of Plaintiff Dailey's employment, Defendant Murphy continued making non-performance related criticisms. Plaintiff Dailey's pay was also decreased to an even lower rate around the time of the facility's temporary shut-down period. On or about October 5, 2020, during a meeting with Defendant Murphy. He berated and belittled Plaintiff Dailey in front of at least one other employee. Despite Plaintiff Dailey's consistent performance, Defendant Murphy verbally attacking her stating that referring to him as "sir" would lead to her termination.

27. Shortly after the yelling incident, Defendant Murphy acted on his previous assertions that Plaintiff Dailey was bad for the company's image. On October 7, 2020, Plaintiff Dailey attempted to login using her credentials, and was unable to do so. Considering that Defendant Murphy had previously terminated other employees by freezing their credentials, Plaintiff Dailey discovered that she was terminated from her position as Corporate Office

Manager.

### ii. (Plaintiff Cook)

28. On November 23, 2009, Plaintiff Cook began working at GGH-The Fitness Group, LLC d/b/a "Fitness Project" (hereinafter "FP"). Over the course of her eleven years with FP, Plaintiff Cook was subjected to sex-based discrimination and unequal compensation as compared to her male counterparts.

29. Throughout her employment, Plaintiff Cook was routinely subjected to a hostile work environment wherein sexist remarks and frequent ridicule from Defendant Murphy was common. However, this type of behavior was not inflicted on male employees. Plaintiff Cook was subjected to constant criticism for her appearance, and pit against other female employees. Additionally, Plaintiff Cook was compensated at a lower rate than her male counterparts for similar or equal work and was forced to apply PTO hours to partial absences, thus subjected her to a variable pay rate.

30. In her role as a Payroll Specialist, Plaintiff Cook was privy to pay records for both hourly and salaried employees. As such, she noticed several discrepancies in the manner in which pay was distributed. Plaintiff Cook noticed that several male employees were compensated at a higher rate than similarly situated female employees, and that African American employees were compensated at a lower rate than their white counterparts. Despite the clear wage gap between male and female employees and minority workers, Plaintiff Cook knew that addressing this issue with Defendant Murphy would likely result in retaliation. Defendant Murphy routinely referenced his own household to solidify his belief that women were "emotional thinkers" while men were more "logical thinkers," and applied this logic while managing the company."

31.  Defendant Murphy often expressed that he would not tolerate discussions amongst female employees unless he was also included and the topic at issue was not a complaint, otherwise it was considered "gossip." Plaintiff Cook and Plaintiff Dailey, were criticized by Defendant Murphy for their cordial relationship which Defendant Murphy saw as threatening to his discriminatory behavior towards female employees.

32.  During their private conversations, Plaintiff Cook and Plaintiff Dailey discussed how Defendant Murphy had created a work culture where women were undercompensated and subjected to sexist comments. Despite being undercompensated, Plaintiff Cook and her female colleagues were severely overworked.

33.  In addition to her workload exceeding that of our male counterparts, Plaintiff Cook was subjected to grossly inappropriate and sexist language. On one occasion, Plaintiff Cook brought her minor child to work, and Defendant Murphy commented, "Oh, she looks just like me!" The implication that he was the father of her child was shockingly offensive, but not uncommon, as he often made crass comments targeted at women.

34.  Aware of the potential dangers of having his female employees compare stories of discrimination and disparate treatment, Defendant Murphy attempted to ensure their loyalty to him by addressing them in a patriarchal fashion. On several occasions, Defendant Murphy referred to Plaintiff Cook as his "work wife" and often claimed that he treated her "like a daughter."

35.  Leading up to Plaintiff Cook's termination, Defendant Murphy continued criticizing Plaintiff Cook about matters unrelated to her performance. On several occasions, Defendant Murphy likened Plaintiff Cook to an unkempt female character from a television show, referring to Plaintiff Cook's clothing as a "lesbian outfit," and referring to her hairstyle

as "flu hair." Furthermore, Plaintiff Cook's pay was also decreased to an even lower rate around the time of the facility's temporary shut-down period. Despite her good performance, Defendant Murphy could not see past his desire to mold Plaintiff Cook's appearance to one he found attractive.

36. Shortly following Plaintiff Dailey's termination, Defendant Murphy attempted to hide his behavior by taking similar actions against Plaintiff Cook. On October 7, 2020, Plaintiff Cook attempted to login using her credentials, and was unable to do so. Considering her knowledge of the termination process, Plaintiff Cook knew that no such formal termination would be given. Instead, Defendant Murphy's method was to restrict a former employee's system access and sever all ties, thus terminated them while attempting to circumvent unemployment benefits. As such, Plaintiff Cook knew that, much like Plaintiff Dailey, she had been terminated from her position as Payroll Specialist.

### VI. FIRST CAUSE OF ACTION: HOSTILE WORK ENVIRONMENT UNDER TITLE VII of the CIVIL RIGHTS ACT of 1964 AS AMENDED
(Plaintiffs)

37. To establish a prima facie case for a hostile work environment based on sex under Title VII, a plaintiff must show that (1) that she belongs to a protected class, (2) that she was subject to unwelcome harassment, (3) that the harassment was based on sex, (4) that the harassment affected a term, condition or privilege of employment, and (5) that the employer knew or should have known about the harassment and failed to take prompt remedial action. *Long v. Eastfield Coll*ege, 88 F.3d 300, (Cir. 1996) (citing) *Nash v. Electrospace Sys., Inc.*, 9 F.3d 401, 403 (5th Cir.1993).

38. Defendants created a hostile work environment for female employees, Plaintiffs, by way of unwelcome comments and mistreatment. As previously stated, Plaintiffs were called

by "pet names" based on Defendant Murphy's desire to humiliate them. In addition to inappropriate name calling, Defendant Murphy also inappropriately commented on Plaintiffs' weight, outward appearance, and alleged sexuality conflating their "image" with their intelligence, performance, and overall ability to continue forward in their positions.

39. Additionally, Defendant Murphy also addressed Plaintiffs as though they were involved in an inappropriate relationship with him despite their clear discomfort. Defendant Murphy's comments were so systematic and overreaching, they extended to Plaintiff Cook's child, as Defendant Murphy made crass jokes about being the father of said child.

40. Defendants' behavior was so severe and pervasive that it affected Plaintiffs' employment, ultimately resulting in their termination. Shortly before being terminated, both Plaintiffs were told that they were not a "good image" for the company. More specifically, their clothing and weight were critiqued and wrongly linked to their overall worth as employees and intelligence. Male employees were not subjected to such critiques and no male employees were terminated for reasons related to their appearance.

41. Defendants were fully aware of the harassing behavior and failed to do anything to remedy the behavior. As owner of the facility, and the main actor harassing Plaintiffs, Defendant Murphy had actual knowledge about the harassing behavior targeted towards Plaintiffs. Despite their clear discomfort, and previous complaints of sexual harassment made by other female employees, Defendant Murphy failed to remedy his behavior, instead choosing to continue his harassing behavior and terminating Plaintiffs within days of each other.

**VII.  SECOND CAUSE OF ACTION: UNPAID OVERTIME WAGES UNDER FLSA, 29 U.S.C. § 201 et. seq.**

42. Plaintiffs assert that due to their constantly varying pay rate, Defendants

misclassified Plaintiffs as exempt employees. As such, the overtime wage provisions set forth in the FLSA, 29 U.S.C. § 201 et. seq., and the supporting federal regulations, apply to Defendants and protect Plaintiffs.

43. Whether an employee falls within an exemption is a question of law; the amount of time the employee devotes to particular duties, as well as the significance of those duties, are questions of fact. *See Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714, 106 S.Ct. 1527, 89 L.Ed.2d 739 (1986).

44. The FLSA requires each covered employer to compensate all non-exempt employees at a rate of not less than one and one-half times their regular hourly rate for all hours worked in excess of forty (40) hours per week.

45. Throughout the relevant period, Defendants misclassified Plaintiffs as exempt employees in an effort to avoid compensating said employees for the excess hours worked over forty (40) hours per week. Furthermore, Defendants decreased Plaintiffs' compensation around the time of the facility's shut-down period, and failed to increase it after the period ended. As it follows, Defendants failed to pay Plaintiffs wages at time-and-a-half for hours that they worked over forty (40) hours in a workweek.

46. As a result of Defendants' unlawful acts, Plaintiffs have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation.

47. Defendants' unlawful conduct has been willful and intentional. Considering the various occasions during which these discrepancies were brought to their attention, Defendants were aware or should have been aware that the practices described herein are unlawful.

Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs.

48. Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

## VIII. THIRD CAUSE OF ACTION UNFAIR WAGES UNDER EQUAL PAY ACT
### (All Plaintiffs)

49. Defendants have violated the Equal Pay Act by failing to compensate Plaintiffs the same wage as their male counterparts for similar or equal work. To establish a prima facie case of FLSA retaliation claim, a plaintiff must show the following: (1) his or her employer is subject to the Act; (2) he or she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and (3) he or she was paid less than the employee of the opposite sex providing the basis of comparison. See *Chance v. Rice University*, 984 F.2d 151, 153 (5th Cir. 1993) *Lenihan v. Boeing Co.*, 994 F.Supp. 776, (1998).

50. Defendants have violated the Equal Pay Act by allowing female employees to perform work equivalent to that of their male counterparts for less pay. Throughout Plaintiffs' employment, Defendants knowingly and intentionally compensated Plaintiffs, in their respective positions, at a lower rate of pay than their male counterparts for the same or similar work.

## IX. JURY TRIAL DEMAND

51. Plaintiffs demand a jury trial on all issues so triable.

## X. PRAYER

52. Plaintiffs respectfully requests the following:

(a)   actual damages for unpaid overtime wages under the FLSA;

(b)   liquidated damages as provided by the FLSA;

(c)   reasonable attorney's fees under the FLSA;

(d)   pre-judgment and post-judgment interest as provided by law;

(e)   all costs of court; and

(f)   any other relief to which Plaintiffs may be entitled, whether in law or in equity.

Respectfully submitted,

**The Ilochi Law Firm**
11601 Shadow Creek Pkwy., #111-325
Pearland, Texas 77584
Phone: (713) 487-9072
BY: /s/ Gabrielle O. Ilochi
ATTORNEY-IN-CHARGE
State Bar No.: 24107815
SDTX Bar No.: 3256155
Email: gabrielle@ilochilaw.com
**ATTORNEY FOR PLAINTIFFS**